

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INFORMATION |
| ) | |
| Plaintiff, ) | CASE NO.: 5:14 CR 81 |
| ) | |
| v. ) | JUDGE JUDGE GAUGHAN |
| ) | |
| ANTHONY J. DAVIAN, ) | Title 15, Sections 78j(b) and 78ff, United |
| ) | States Code, Title 17, Code of Federal |
| Defendant. ) | Regulations, Section 240.10b-5, Title 18, |
| ) | United States Code, Sections 1341, 1343, |
| ) | 1957, and 2 |

The United States Attorney charges:

I.  GENERAL ALLEGATIONS

At all times material to this Information, except where otherwise noted:

1. Defendant ANTHONY J. DAVIAN, was a resident of Copley, Ohio.

2. In July 2008, Defendant created and became managing member of Davian Capital Advisors, LLC ("Davian Capital"), a hedge fund organized under the laws of Delaware with its principal place of business in Richfield, Ohio.

3. Davian Capital was engaged in the unregistered offer and sale of securities in the form of limited partnership interests in various private funds.

4. Since at least June 2011, Davian Capital was an unregistered investment adviser to several private investment funds formed by Defendant, including Davian Capital L.P., Davian Capital L.P. II, Rubber City Gravity L.P., Rubber City Pure Alpha, L.P., Cleveland Gravity Fund L.P., Cleveland Pure Alpha Fund, LP, Cleveland Pure Alpha II L.P., and Cleveland Precious Metals Fund, LP (collectively, the "Funds").

5. Davian Capital L.P. ("LP I") was a Delaware limited partnership formed by Defendant in 2008. LP I was purportedly a private long/short equity investment fund, which Defendant told investors was comprised mainly of friends and family as investors.

6. Davian Capital L.P. II ("LP II") was a Delaware limited partnership formed by Defendant in March 2011. LP II was purportedly a private long/short equity investment fund that Defendant made available to new investors after LP I closed. Davian told investors that LP II would be effectively the same fund as LP I.

7. Rubber City Pure Alpha, L.P. ("RC Pure Alpha") was a Delaware limited partnership formed by Defendant in July 2012. RC Pure Alpha was purportedly a private long/short equity investment fund.

8. Rubber City Gravity L.P. ("RC Gravity") was a Delaware limited partnership formed by Defendant in October 2012. RC Gravity was purportedly a private short equity investment fund.

9. Cleveland Gravity Fund L.P. ("Cleveland Gravity") was a Delaware limited partnership formed by Defendant in May 2013. Cleveland Gravity was purportedly a private short equity investment fund.

10. Cleveland Pure Alpha Fund, LP ("Cleveland Pure Alpha") was a Delaware limited partnership formed by Defendant in May 2013. Cleveland Pure Alpha was purportedly a private long/short equity investment fund.

11. Cleveland Pure Alpha Fund II L.P. ("Cleveland Pure Alpha II") was a Delaware limited partnership formed by Defendant in May 2013.

12. Cleveland Precious Metals Fund, LP ("Cleveland Precious Metals") was a Delaware limited partnership formed by Defendant in May 2013. Cleveland Precious Metals was purportedly a private precious metals fund that would hold and store precious metals.

13. Defendant owned and managed other entities, including Davian Holdings LLC, Davian LLC, Davian & Co., LLC, The Davian Letter LLC ("The Davian Letter"), The Alumni Fund, L.P. ("Alumni Fund"), Pippin PetLLC, and Stock.Ly Inc.

14. Davian Capital maintained bank accounts at PNC Bank, First Merit Bank, and Key Bank (the "Davian Capital Accounts"). Defendant was the sole authorized signatory on the Davian Capital Accounts.

15. Davian Capital maintained on-line brokerage accounts at Interactive Brokerage, Boursa Investments, and others (the "Davian Brokerage Accounts"). These brokerage firms maintained on-line operations throughout the United States.

16. Defendant had complete control over Davian Capital, overseeing the Davian Capital Accounts and the Funds with sole management and investment authority.

17. Defendant had signatory authority over the Davian Brokerage Accounts and used them to execute and cause to be executed trades for Davian Capital investors and himself.

## II. THE FRAUDULENT SCHEME

18. To accomplish the fraudulent scheme, from in or around July 2008, through in or around July 2013, Defendant promoted and sold securities to at least twenty different investors in the states of Tennessee, Texas, California, and Florida, resulting in millions of dollars of overall investor loss. While Defendant sold securities and investments in the form of shares in the Funds, Defendant used the investments to enrich himself, to pay his personal expenses, to pay his operating expenses, and to pay off certain earlier investors at his discretion.

19. Early in the scheme, Defendant misrepresented to prospective investors that he managed millions of dollars in LP I to create the illusion that Davian Capital was larger and more sophisticated than it actually was.

20. Defendant created seven limited partnerships as private investment funds managed by Davian Capital, including LP II, RC Pure Alpha, RC Gravity, Cleveland Gravity, Cleveland Pure Alpha, Cleveland Pure Alpha II, and Cleveland Precious Metals, to further maintain the illusion that Davian Capital was a significant and successful operation.

21. Defendant provided prospective investors with marketing materials falsely touting the Funds' supposedly high returns and describing his purportedly profitable trading strategies.

22. By 2011, Defendant falsely represented to investors and prospective investors, both orally and in writing, that he managed hundreds of millions of investors' dollars through Davian Capital's Funds. Defendant also misrepresented Davian Capital's performance, claiming to achieve rates of return to investors as high as 27%.

23. Defendant and others at his direction provided investors with fictitious letters and client statements, through the U.S. mails, reflecting positive investment performance and high balances when, in truth and in fact, the statements did not reflect the true position of the

investors' funds. To lend legitimacy to the scheme, Defendant prepared and caused to be prepared these client statements on Davian Capital letterhead.

24. Defendant falsely represented that the investors were achieving returns on their investments, both orally and in writing, causing investors to defer redemption requests and lull them into the belief that their investments were making money.

25. Defendant regularly disregarded corporate formalities, routinely commingling funds between and among Davian Capital and the Funds.

26. Defendant prohibited others from accessing or monitoring the Davian Capital Accounts, including Davian Capital's third-party administrator and certain Davian Capital employees that generated the client statements.

27. Defendant falsely represented to investors that Davian Capital was audited by an independent third party auditing firm, when in truth and in fact, Davian Capital's finances never received a full audit from an independent third party.

28. Rather than actually investing all of the investors' funds, Defendant used the investors' money to enrich himself, to pay his personal expenses, and to pay his operating expenses.

29. Despite Defendant's misrepresentations that Davian Capital managed hundreds of millions of investors' dollars, in truth and in fact, Davian Capital investors provided Defendant with approximately $2,000,000 to invest in the Funds.

30. Defendant caused investors to lose approximately $1,800,000 in total.

31. Some of the transactions that were part of the fraudulent scheme included, but were not limited to, the following:

      a.     On or about June 29, 2011, an investor wired $100,400.00 into an LP II bank account that previously had a balance of less than $13.00. Defendant immediately transferred approximately $65,000.00 of that money to a previously empty bank account belonging to Davian Capital. With it, Defendant bought an Audi Q7 Prestige automobile for his personal use.

      b.     In or around June 2013, Davian Capital's landlord invested $25,000.00 in Cleveland Precious Metals. Defendant immediately diverted that money to pay his personal attorney and to honor other investors' redemption requests.

      c.     In or around June 2013, Defendant, while aware that he was under federal criminal investigation, pressured three brothers to bundle together several hundred thousand dollars to invest with his funds. He told them that if they acted fast, he would give them a break on Davian Capital's management fees. Not wanting to miss out on such an opportunity, the three brothers each contributed $75,000.00. On July 5, 2013, the brothers wired $225,000.00 to Cleveland Gravity's bank account. The three brothers never authorized Defendant to use those funds for anything other than investing in Cleveland Gravity. Unbeknownst to the three brothers, Defendant immediately used their money to fund the construction of a luxury house for his personal use.

## COUNT ONE
**(Securities Fraud)**

33.    The allegations contained in paragraphs 1 through 31 of this Information are repeated and realleged as if fully set forth herein.

### Statutory Violation

33.    From in or around July 2008, through in or around July 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ANTHONY J. DAVIAN,

6

unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by

    a. employing devices, schemes, and artifices to defraud;

    b. making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    c. engaging in acts, practices, and courses of business which operated and would operate as a fraud upon investors, in connection with the purchase and sale of the securities, to wit: the Funds formed by Defendant through Davian Capital.

34. From in or around July 2008, through in or around July 2013, Defendant received and embezzled approximately $1,800,000 in investor monies.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### COUNTS 2 and 3
### (Mail Fraud)

The United States Attorney further charges:

35. The allegations contained in paragraphs 1 through 31 of this Information are repeated and realleged as if fully set forth herein.

36. From in or around October 2012, through in or around January 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ANTHONY J. DAVIAN, did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

37. On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, for the purpose of executing the foregoing scheme, Defendant did place and cause to be placed in an authorized depository the mail matter described below to be sent and delivered according to the direction thereon, with each mailing constituting a separate count of Mail Fraud:

| COUNT | DATE | DOCUMENT MAILED | ENDING BALANCES ACCORDING TO DEFENDANT |
|---|---|---|---|
| 2 | October 2012 | Third Quarter 2012 Account Statement for J.M., mailed from the Northern District of Ohio | $585,111.14 |
| 3 | January 2013 | Fourth Quarter 2012 Account Statement for J.M., mailed from the Northern District of Ohio | $586,239.88 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

### COUNTS 4 through 7
### (Wire Fraud)

The United States Attorney further charges:

38. The allegations contained in paragraphs 1 through 31 of this Information are repeated and realleged as if fully set forth herein.

39. From in or around July 2008, through in or around July 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, ANTHONY J. DAVIAN, knowingly devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

40. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, for the purpose of executing and attempting to execute the foregoing scheme and artifice, transmitted, caused to be transmitted, and aided and abetted the

transmission of writings, signs, signals, pictures, and sounds by means of wire and radio communication, in interstate and foreign commerce, to wit: electronic transfers of funds, in the amounts described below, from accounts described below, into PNC Bank accounts for the Funds maintained by Defendant's business, Davian Capital, at PNC Bank, in Cleveland, Ohio:

| COUNT | DATE | AMOUNT | BANK | FUND |
|---|---|---|---|---|
| 4 | 06/29/2011 | $100,400.00 | Millennium Trust Company, located in Oakland, Illinois | LP II |
| 5 | 12/18/2012 | $165,000.00 | UBS, located in New York, New York | RC Gravity |
| 6 | 12/19/2012 | $281,165.00 | First National Bank of Tennessee, located in Livingston, Tennessee | RC Gravity |
| 7 | 07/05/2013 | $225,000.00 | HSBC, located in New York, New York | Cleveland Gravity |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 8
### (Money Laundering)

41. The allegations contained in paragraphs 1 through 31 of this Information are repeated and realleged as if fully set forth herein.

42. On or about July 5, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ANTHONY J. DAVIAN, knowingly engaged, attempted to engage, and caused others to engage, in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, to wit: Defendant used and caused to be used the wires to transfer $225,000 from the Cleveland Gravity Fund maintained by Defendant's business, Davian Capital, at PNC Bank, account x1053, to Evergreen Homes, such property

having been derived from specified unlawful activity, that is, wire fraud, a violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## COUNT 9
### (Money Laundering)

43. The allegations contained in paragraphs 1 through 31 of this Information are repeated and realleged as if fully set forth herein.

44. On or about June 30, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ANTHONY J. DAVIAN, knowingly engaged, attempted to engage, and caused others to engage, in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, to wit: Defendant negotiated check number 1001, in the amount of $64,825.63, drawn on the PNC Bank account x9884 of Defendant's business, Davian Capital, to Audi of Bedford, such property having been derived from specified unlawful activity, that is, wire fraud, a violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## COUNTS 10 through 14
### (Money Laundering)

45. The allegations contained in paragraphs 1 through 31 of this Information are repeated and realleged as if fully set forth herein.

46. From on or about October 5, 2011, through on or about September 21, 2012, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ANTHONY J. DAVIAN, knowingly engaged, attempted to engage, and caused others to engage, in the monetary transactions affecting interstate commerce in criminally derived property of values greater than $10,000, to wit: Defendant negotiated the following checks drawn on the PNC bank

account x9884 of Davian Capital, such property having been derived from specified unlawful activity, that is, wire fraud, a violation of Title 18, United States Code, Section 1343:

| COUNT | DATE | AMOUNT | NEGOTIATED CHECK DRAWN ON PNC BANK ACCOUNT x9884 | PAYEE |
|---|---|---|---|---|
| 10 | 10/05/2011 | $20,000.00 | 1013 | Estates of Bath |
| 11 | 01/20/2012 | $33,750.00 | 1022 | Estates of Bath |
| 12 | 04/13/2012 | $33,750.00 | 1043 | Estates of Bath |
| 13 | 09/13/2012 | $34,755.68 | 942355 | Bond and Assoc. Title Agency |
| 14 | 09/21/2012 | $33,750.00 | 1074 | Estates of Bath |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

### FORFEITURE: COUNT 4

47. The allegations of Count 4 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a) (1)(C) and 28 U.S.C. § 2461(c). As a result of the foregoing offense, Defendant ANTHONY J. DAVIAN shall forfeit to the United States all property, real and personal, which constitutes, or is derived from, proceeds traceable to the commission of such offense; including, but not limited to, the following:

  a.  2011 Audi Q7, VIN: WA1DGAFE0BD010538; Owner: Anthony J. Davian; Approximate Value: $41,600.00.

### FORFEITURE: COUNT 9

48. The allegations of Count 9 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(1). As a result of the foregoing offense, Defendant ANTHONY J. DAVIAN shall forfeit to the United States all

property, real and personal, involved in such offense, and all property traceable to such property; including, but not limited to, the following:

    a.    2011 Audi Q7, VIN: WA1DGAFE0BD010538; Owner: Anthony J. Davian; Approximate Value: $41,600.00.

STEVEN M. DETTELBACH  
United States Attorney

By: *Ann C. Rowland*  
ANN C. ROWLAND, Unit Chief  
Major Fraud & Corruption Unit
